UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br>  v.<br>PEYTON ERWIN EIDSON,<br><br>    Defendant. | Case No. CR 88-021 SI<br>Case No. CR 88-168 WHA<br>Case No. 11-70705 MAG / CR 17-490 SI<br><br>**DETENTION ORDER** |

## I. BACKGROUND

Defendant Peyton Erwin Eidson is charged in two indictments with numerous drug charges, including conspiracy to import marijuana, in violation of 21 U.S.C. §§ 963 and 952, conspiracy to distribute and possess with the intent to distribute marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and 46 U.S.C. § 1903(j), importation of marijuana, in violation of 21 U.S.C. § 952, and distribution and possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) and 46 U.S.C. § 1903(a). He was also charged by complaint with passport fraud, in violation of 18 U.S.C. § 1542. Eidson made his initial appearance on all charges on September 1, 2017. The government moved for Defendant's detention pursuant to the Bail Reform Act, and asked for a hearing as permitted by 18 U.S.C. § 3142(f). Pre-Trial Services prepared a bail study. The parties appeared on September 7, 2017 for a bail hearing. Defendant was present on each occasion, represented by counsel. For the reasons stated below, the Court orders that Defendant be detained pending trial.

DETENTION ORDER

## II. LEGAL ANALYSIS

The Bail Reform Act, 18 U.S.C. § 3142(f), requires that the government prove by a preponderance of the evidence that there are no conditions that reasonably will assure the Defendant's appearance as required, and that the government prove by clear and convincing evidence that there are no conditions which reasonably will assure the safety of the community. In cases such as this, where there is probable cause to believe that the Defendant committed a violation of the Controlled Substances Act and faces a maximum of 10 years or more in prison, there is a rebuttable presumption that no condition or combination of conditions reasonably will assure the Defendant's appearance as required and the safety of the community. 18 U.S.C. § 3142(e)(3)(A). The presumption of detention shifts the burden of production to the defendant; the ultimate burden of persuasion remains with the government. See United States v. Hir, 517 F.3d 1081, 1086 (9th Cir. 2008). The presumption retains evidentiary weight, id., and the defendant must show "some credible evidence" to rebut it, United States v. Chen, 820 F. Supp. 1205, 1207 (N.D. Cal. 1992). Close cases should result in release: "[t]o give effect to the principle that doubts regarding the propriety of release be resolved in favor of the defendant, the court is to rule against detention in close cases." Chen, 820 F. Supp. at 1208 (citing United States v. Motamedi, 767 F.2d 1403, 1405-06 (9th Cir. 1985)).

In evaluating whether pretrial release is appropriate, the Court considers (1) the nature and circumstances of the offense, (2) the weight of the evidence, (3) the history and characteristics of the person (including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, or record concerning appearance at court proceedings), and (4) the nature and seriousness of the danger to any person or the community posed by the person's release. 18 U.S.C. § 3142(g); Motamedi, 767 F.2d at 1407. Bail hearings generally proceed by proffer, and the rules of evidence do not apply. 18 U.S.C. § 3142(f).

In this case, the government proffered the following. The defendant has been a fugitive from justice for over 30 years and has appeared in court only because he was removed from Australia, put on an international flight and escorted by Australian immigration authorities to the United States, where he was delivered into the custody of federal agents. The defendant was arrested in Sonoma County on

DETENTION ORDER

2

August 8, 1985. At the time of his arrest, law enforcement seized his passport. The defendant posted bail and was released. During the execution of search warrants following that arrest, agents discovered over 2,000 pounds of marijuana. Approximately a month later, the defendant applied for a replacement passport at the passport office in Los Angeles. In that application, the defendant falsely stated that he had lost his prior passport, that he had accidentally left it in a taxi in San Francisco. This application was denied because law enforcement had placed an alert on his file. Three months later, the defendant applied for a passport under the name "Michael McGoldrick." He submitted this application in San Antonio, Texas. He received this passport and, so far as the government was aware, he left the United States and did not return until August 31, 2017.

The defendant settled in Australia in 1986 and lived there for 25 years under the name "Michael McGoldrick." In 1988, the government indicted the defendant in two separate conspiracies (CR 88-021 SI and CR 88-168 WHA), both involving the importation of large quantities of marijuana from Asia to the United States.

In 1995, he applied through the United States Consulate in Brisbane, Australia, to renew his passport. Once again, he falsely represented that his name was "Michael McGoldrick." This application was granted and he received another passport in that name. In 2005, the defendant again applied to renew his passport, and again falsely represented that his name was "Michael McGoldrick." This application was granted and he received a renewed passport in that name. In 2011, agents working for the Department of State finally identified the defendant as the impostor using the "Michael McGoldrick" passport and notified Australian authorities. Australian authorities arrested the defendant and charged him with violations of Australian immigration laws. He pleaded guilty to these offenses, and to structuring approximately $30,000 in cash payments into the United States. The defendant did this shortly after he was released on bail in Australia.

In 2013, the defendant wrote a letter to the United States Attorney, Melinda Haag, in which he informed her of his intent to return to the United States and face the charges against him as soon as his legal obligations were complete in Australia. He also sought to negotiate with the government for his return in exchange for a plea deal. Ultimately, the defendant rejected the government's plea offer and he did not return to the United States. Instead, he fought deportation and sought to remain in Australia.

DETENTION ORDER

Indeed, in interviews with local media, the defendant reportedly told Australian news outlets that he wanted to live out his remaining days in Australia. He reportedly said that Australia was not one of the places he wanted to live; it was the only place he wanted to live. The defendant owns property in Australia and his daughter continues to reside there.

In 2017, Australian authorities again arrested the defendant and put him in immigration detention. The defendant once again sought to negotiate with the United States to arrange a plea deal before he returned. Once again, he rejected the government's offer. Finally, the Australian government removed him from Australia and delivered him into custody here.

The government also proffered that the defendant appears to have contacts and resources in Mexico. Documents seized from his residence in Australia included leases for properties in a town called Santa Maria del Oro, in Nayarit, Mexico, as well as a Mexican birth certificate for his daughter. That birth certificate lists a different place and date of birth than the one listed on her original United States passport. In addition, the government searched the defendant's Facebook account and found communications with a person living in Mexico. From the nature of the communications, it appears that the persons in Mexico are old and dear friends of the defendant, and that one of them acts as his agent regarding the properties the defendant holds there.

Finally, the government proffered that the defendant does not appear to have any contacts with the Northern District of California.

In response, the defendant offered a cousin as a possible surety. The defendant's cousin, who lives in Hemet, California, owns a business and several commercial and residential properties and was willing to post one of those properties as collateral to secure the defendant's release. The defendant's cousin reported to Pretrial Services, however, that he had only recently re-established contact with the defendant in late 2016. The defendant's cousin said he had no contact with the defendant while the defendant was a fugitive.

Pretrial Services considered these facts and concluded that the conditions the defendant offered – a cousin as a surety and a secured bond – were not sufficient to mitigate the risk of nonappearance. Pretrial Services thus recommended that the defendant be detained.

In light of the Defendant's history, the nature and circumstance of the charged offenses and the

DETENTION ORDER
4

weight of the evidence, the Court finds that the Defendant has not rebutted the presumption that he poses a risk of non-appearance, and that there are no conditions or combinations of conditions which reasonably would assure the Defendant's appearance if the Court released the Defendant.  First, the facts that the defendant was a fugitive for over 30 years, that he lived under an assumed name for most of that time in an effort to avoid detection and prosecution, and that he refused to surrender voluntarily to American authorities after he was discover (as he promised in 2013) all indicate that the defendant is a serious flight risk.  Second, the fact that the defendant has no ties to this District, but strong ties to Mexico, mean that depriving the defendant of travel documents will not adequately mitigate the risk that he will flee the jurisdiction.  Indeed, he did that once before even after the government seized his passport.  Third, the facts that the defendant sent money into the United States after his arrest in Australia and that he retains property in Mexico and Australia indicate that he has the resources to flee if he so chooses.  Finally, the fact that the defendant's proposed surety had no contact with the defendant for over two decades and only recently re-established contact, indicates that the surety is not the type of person who can exert the kind of moral suasion necessary to ensure that the defendant does not again absent himself from the jurisdiction.

### III.  CONCLUSION

For the reasons set forth above, Defendant shall remain committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  Defendant shall be afforded reasonable opportunity for private consultation with counsel.  On order of a court or the United States, or on request of an attorney for the Government, the person in charge of the corrections facility in which Defendant is confined shall deliver Defendant to a United States marshal for the purpose of an appearance in connection with a court proceeding.

IT IS SO ORDERED.

DATED:  September 19, 2017

*Sallie Kim*
_____
HON. SALLIE KIM
United States Magistrate Judge

DETENTION ORDER
5